**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ANTHONY D. WHITE,<br><br>          Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>          Defendant. | No. CV 13-6674-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 18, 2013, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 4, 2013, and November 1, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 29, 2014, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 10, 1959. [Administrative Record ("AR") at 16, 87.] He has at least a high school education and no past relevant work experience. [AR at 16, 64, 66-67, 143.]

On January 31, 2011, plaintiff filed an application for Supplemental Security Income payments, alleging that he has been unable to work since March 1, 1994. [AR at 10, 72, 138, 142, 155, 162.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 10, 90-93, 96-100, 102.] A hearing was held on December 12, 2011, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 10, 59-77.] A medical expert ("ME") and a vocational expert ("VE") also testified. [AR at 10, 62-65.] On January 27, 2012, the ALJ issued a decision concluding that plaintiff had not been under a disability since January 31, 2011, the date the application was filed. [AR at 10-17.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5.] When the Appeals Council denied plaintiff's request for review on July 8, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the

Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires

3

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 31, 2011, his application date. [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairments of "joint pain and mood disorder, not otherwise specified." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[1] [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform medium work as defined in 20 C.F.R. § 416.967(c), "except frequent climbing of ramp/stairs/ladder/rope/scaffolds, balancing, stooping, crouching, crawling and kneeling and

---

[1]    See 20 C.F.R. pt. 404, subpt. P, app. 1.

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

limited to frequent interaction with the public." [AR at 13.] At step four, the ALJ concluded that plaintiff has no past relevant work experience. [AR at 16.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as a "hand packer" and "cleaner II." [AR at 16-17.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since January 31, 2011. [AR at 12, 17.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that "the ALJ did not fully and fairly develop the record," and specifically asserts that the ALJ made no attempt "to get [plaintiff]'s mental health treatment records from Sharper Future even though [plaintiff] indicated he had been receiving treatment there." [JS at 2-5.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

While plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. This duty is only triggered, however, when the ALJ finds the record inadequate to allow for proper evaluation of the evidence. See McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); Smolen, 80 F.3d at 1288 (holding that, where the ALJ needs to know the basis of a doctor's opinion in order to evaluate it, the ALJ has a duty to conduct an appropriate inquiry); see also Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that ALJ fulfilled his duty to develop the record when he "voiced his concerns to [the claimant and counsel], requested an additional inquiry into the basis for [a medical opinion] and explained that he would keep the record open so that it could be supplemented by responses from [the physician].").

In a California Department of Corrections and Rehabilitation ("CDCR") Offender Parole Clinical Summary, dated August 5, 2008, Parole Outpatient Clinic ("POC") Psychologist Dr. Woods indicated that plaintiff had "[n]o psychiatric [history]," that plaintiff's mental status examination results were within normal limits, and that plaintiff's "[t]reatment [p]lan" was to "[c]ontinue in [i]ndividual [treatment], addressing all aspects of criminal [behavior] and thinking." [AR at 204.]

In a Client Case Note dated March 18, 2009, Dr. Woods indicated that plaintiff's treatment was cancelled "[because] patient revoked." [AR at 172.]

In a notation on plaintiff's CDCR Offender Parole Clinical Summary dated March 7, 2011, POC Psychologist Dr. Light reported that plaintiff is "now seen at Sharper Future. Case closed." [AR at 204.]

In a Complete Psychiatric Evaluation performed by Dr. Norma Aguilar on March 27, 2011, Dr. Aguilar diagnosed plaintiff with psychotic disorder, not otherwise specified, and mood disorder, not otherwise specified. [AR at 183.] She reported that plaintiff stated "that he had psychiatric treatment when he was in prison and was prescribed medications off and on such as Thorazine and other medications that he cannot recall," and that "[h]e now goes to parole outpatient clinic since November 2010 but no medication was prescribed." [AR at 182.] She additionally noted that plaintiff "denies any prior inpatient psychiatric treatment." [Id.] In her functional assessment, Dr. Aguilar indicated that plaintiff's abilities "to follow simple oral and written instructions," follow "detailed instructions," and perform his daily activities were "not limited," but that plaintiff had "mild limit[ations]" with regard to his abilities to "interact appropriately with the public, coworkers and supervisor," "comply with job rules such as safety and attendance," "respond to changes in a routine work setting," and "respond to work pressure in a usual work setting." [AR at 184.] Dr. Aguilar's prognosis for plaintiff was "fair with treatment," and she opined that plaintiff "is competent to manage his own funds." [Id.]

In a Psychiatric Review Technique completed on April 19, 2011 [AR at 190-200], state agency physician Dr. R.E. Brooks indicated that plaintiff has "[m]ild" limitations with regard to "[d]ifficulties in [m]aintaining [s]ocial [f]unctioning," and with regard to "[d]ifficulties in [m]aintaining [c]oncentration, [p]ersistence, or [p]ace." [AR at 198.]

6

In her decision, the ALJ found that, "[d]espite [plaintiff's] declarations of psychiatric illness, there are utterly no ongoing mental health treatment records."[3] [AR at 15.] The ALJ cited the March 2009 treatment note indicating that plaintiff "had canceled treatment due to [plaintiff's] revocation," and found that although plaintiff "told Dr. Aguilar he had a history of mental health treatment during incarcerations, an August 2008 parole clinical summary indicated no record of psychiatric history." [AR at 15 (omitting citations); see also AR at 204.] The ALJ noted Dr. Aguilar's opinion that plaintiff "had no more than mild limitations in his ability to interact appropriately with the public, coworkers and supervisors; comply with job rules; respond to changes in a routine work setting; and respond to work pressure in a usual work setting," that plaintiff's abilities "to follow simple instructions and perform daily activities were not limited," and that plaintiff's "prognosis was fair with treatment." [AR at 15.] She further noted Dr. Brooks' opinion that plaintiff "had no limitation in activities of daily living and only mild limitation in maintaining social functioning, concentration, persistence or pace." [Id.] Finally, the ALJ found that even if plaintiff "began counseling sessions ... as of April of 2011," as he testified, "there are no records to support this statement." [AR at 15.]

Here, the ALJ had no duty to try to obtain additional evidence because the medical evidence in the record was sufficient to determine plaintiff's claim of disability [see 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)], and there were no ambiguous medical records or conflicting medical findings regarding the existence or severity of plaintiff's mood disorder. [See generally AR 1-205.] Specifically, the evidence supports the ALJ's conclusion that, even giving plaintiff "the benefit of the doubt" and finding his mood disorder to be a severe medically determinable impairment, plaintiff is not under a disability. [See AR at 16-17; see also AR at 204 (CDCR clinical summary dated August 5, 2008, reporting that plaintiff's mental status examination results were "within normal limits"), 172 (POC case note dated March 18, 2009, indicating that treatment was

---

[3] The ALJ additionally found that "[a]lthough the psychiatric consultative examiner and State agency physician essentially did not find [plaintiff's] limitations were more than mild, the undersigned has nevertheless given [plaintiff] the benefit of the doubt and found mood disorder to be a severe medically determinable impairment." [AR at 15-16.]

1 "cancelled" because plaintiff "revoked"), 181-84 (Dr. Aguilar's Complete Psychiatric Evaluation, dated March 27, 2011, finding plaintiff had no limitations greater than "mild," and opining that plaintiff's prognosis was "fair with treatment"), 198 (Psychiatric Review Technique, dated April 19, 2011, finding plaintiff had no limitations greater than "mild").] Plaintiff, and not the ALJ, bore the burden of introducing evidence to support his claim of disability. See Tidwell, 161 F.3d at 601; see also Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); Duenas v. Shalala, 34 F.3d 719, 722 (9th Cir. 1994). Plaintiff does not cite, and the Court does not find, any ambiguous evidence in the record regarding plaintiff's mental impairment, or any indication that the ALJ found the record inadequate to allow for a proper evaluation of the evidence. [See AR at 15-16]; Smolen, 80 F.3d at 1288.

Moreover, even if the ALJ's duty to obtain additional evidence was triggered, the ALJ faithfully discharged any such duty by indicating during the hearing that there was a lack of evidence to support plaintiff's allegations, and allowing plaintiff an opportunity to supplement the record. [See, e.g., AR at 68 (At the December 12, 2011, hearing, the ALJ asked plaintiff where he received counseling services, and stated: "[T]hat's part of the problem. We have virtually no records on you here."), 76 (The ALJ agreed to hold the record open for thirty days in order for plaintiff to supplement the record.)]; Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citation omitted) ("The ALJ may discharge [her] duty [to develop the record] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.").[4] As an initial matter, the Court observes that the ALJ in her

---

[4] Plaintiff appears to contend that additional records, if provided by Sharper Future, would contain medical findings regarding the existence or severity of plaintiff's mood disorder, such that the ALJ "may have come to a different conclusion regarding [his] mental impairments and restrictions on [his] ability to perform work-related activities." [JS at 4-5.] To the extent plaintiff contends that his statements at the hearing -- along with any other indications in the record that he receives treatment at Sharper Future -- sufficed to trigger the ALJ's duty to further develop the record (see Tonapetyan, 242 F.3d at 1150 (holding that the ALJ's duty to develop the record is
(continued...)

decision relied on the Complete Psychiatric Evaluation and Psychiatric Review Technique, both provided at the request of the Commissioner in furtherance of the ALJ's duty to assist plaintiff in developing the record. [AR at 181-84, 190-200]; see Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001) ("One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, i.e., 'a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense.'") (citing 20 C.F.R. §§ 404.1519, 416.919).

Next, before questioning plaintiff about any psychological treatment he had received, the ALJ informed plaintiff that "part of the problem" for plaintiff was that there were "virtually no records" with regard to plaintiff seeking or receiving counseling. [AR at 68-69]; see, e.g., De Guzman v. Astrue, 343 Fed.Appx. 201, 207 (9th Cir. 2009) (ALJ satisfied his duty to develop the record, in part, by voicing his concern about the insufficiency of certain medical evidence to plaintiff and plaintiff's counsel) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3); but see Cook v. Astrue, 2009 WL 2767680, *5-6 (C.D. Cal. Aug. 26, 2009) (finding that the ALJ did not fulfill his affirmative duty to assist the claimant in developing the record because the ALJ did not alert the plaintiff to the inadequacy of certain medical opinion evidence, request that plaintiff and plaintiff's counsel make additional inquiry into the basis of a medical opinion, or hold the record open for supplemental records). Plaintiff and plaintiff's counsel were on notice that the record did not contain adequate evidence of plaintiff's alleged mood disorder.

Finally, at the hearing, the ALJ explicitly asked plaintiff's counsel "how many days or how much time" plaintiff would need "to supplement the record indicating you have missing records," and agreed to hold the record open for thirty days following the hearing in order for plaintiff to so supplement. [AR at 76.] Under the circumstances, the Court finds the ALJ's indication of insufficient evidence of plaintiff's alleged mood disorder, along with the ALJ's decision to hold open the record

---

[4](...continued)
"heightened where the claimant may be mentally ill and thus unable to protect [his] own interests")), for the reasons provided infra, the Court finds that the ALJ satisfied any such duty. [See AR at 68-69.]

for thirty days in order for plaintiff's counsel to supplement the record with evidence supporting that claim, sufficient to satisfy the ALJ's duty to fully and fairly develop the record. See Cardy v. Astrue, 303 Fed.Appx. 393, 394 (9th Cir. 2008) ("By holding the record open following Cardy's hearing as well as identifying areas of ambiguity, the ALJ fulfilled his duty to fully and fairly develop the record.") (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3); Tidwell, 161 F.3d at 602.

In sum, the Court finds that the record is not inadequate to allow for proper evaluation of the evidence, and that the ALJ was under no obligation to further develop the record. See Mayes, 276 F.3d at 459-60.

## VI.
## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; (2) the decision of the Commissioner is **affirmed**; and (3) the Clerk of the Court shall serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 25, 2014

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE